**SO ORDERED.**

**SIGNED this 4 day of March, 2016.**

_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

RACHEL M. BROWN                          CASE NO. 15-05477-5-JNC
                                                                      CHAPTER 13

        DEBTOR

ORDER ON TRUSTEE'S OBJECTION TO CONFIRMATION OF PLAN
AND MOTION TO DISMISS CASE

The matter before the court is the Trustee's Objection to Confirmation of Plan and Motion to Dismiss Case filed December 23, 2015, Dkt. 13, and the chapter 13 debtor's response filed on January 12, 2016, Dkt. 14. A hearing took place on February 17, 2016, in Greenville, North Carolina, and the parties submitted post-hearing memoranda of law, Dkts. 19 and 20. After consideration of the pleadings, arguments of counsel, evidence presented at hearing and other matters of record, the court finds and determines as follows:

BACKGROUND

Rachel M. Brown ("Ms. Brown" or the "Debtor") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on October 8, 2015. Her schedules and the claims filed show $86,485.96 in secured debts, $3,330.00 in unsecured priority claims, and general unsecured claims of $34,052.57, of which $10,467.37 is listed non-dischargeable student loan debt. Based on Ms. Brown's monthly income, the applicable commitment period in this case is five years, pursuant to

11 U.S.C. § 1325(b)(4)(A)(ii). Ms. Brown asserts that her plan will result in a return to unsecured creditors of 6.6%, but the Trustee forecasts the unsecured class dividend as roughly 5.7%.

Among the assets listed in Ms. Brown's schedules are two motor vehicles, a 2010 GMC Acadia (the "GMC") and a 2008 Honda Accord (the "Honda"). Both vehicles are subject to perfected liens held by Farm Bureau Bank, and Ms. Brown seeks to keep both vehicles for the life of her chapter 13 plan. As of the petition date, the debts secured by liens on the GMC and the Honda totaled $14,902.00 and $6,335.00 respectively. To retain both automobiles, Ms. Brown proposes to make the required monthly secured payments to Farm Bureau Bank of $282.93 for the GMC and $120.28 for the Honda, a sum of $403.21, inside her plan. She claims a deduction from her monthly income of $1,234.00 ($517.00 for each vehicle, plus an additional $200.00 based on the Honda's age and mileage)[1] for transportation costs, as discussed more fully below.

At the hearing, Ms. Brown testified that she drives the GMC to and from work and for other household uses, while her adult twenty-seven-year-old daughter primarily uses the Honda to provide transportation to and from community college and for the care of her five-year-old son, the Debtor's grandson. The daughter has no current income and does not collect child support. She does not contribute to household expenses. She and the grandson now live with Ms. Brown and are entirely dependent upon the Debtor for provision of food, clothing and other necessities of life. In addition, the daughter owns a 2007 Lexus automobile that is currently inoperable due to need of a new transmission and other costly repairs that neither she nor Ms. Brown can currently afford to pay. Ms. Brown did not establish a current value for the Lexus.

Throughout the short life of the case, Ms. Brown's positions on dependents and household size have been inconsistent moving targets. The household size was noted as four in Schedule J

---

[1] The Internal Revenue Manual ("IRM") allows an additional operating expense of $200.00 where the vehicle at issue is "currently over six years old or has reported mileage of 75,000 miles or more." I.R.M. 5.8.5.22.3(6) (2013).

filed in October 2015, which identified the household as consisting of Ms. Brown, her seven-year-old daughter, a stepson (no age given) and a twenty-seven-year-old son. Her Official Form 22C-1 and 2 (the "Form 22C") filed simultaneously also lists the number of tax return dependents as four, although it is difficult to see how Ms. Brown could legitimately claim the twenty-seven-year-old son as a dependent on federal tax forms. In any event, subsequent pleadings and testimony from Ms. Brown relay that her adult son moved out of her home after the petition was filed. At the hearing in February 2016, Ms. Brown testified that her household currently consists of herself, the seven-year-old daughter, the twenty-seven-year-old daughter, the five-year-old grandson, and Ms. Brown's stepfather, a total of five persons. Apparently, no stepson now lives in the home, if one ever did. It is not clear when the daughter and grandson moved in to Ms. Brown's home. Further, Ms. Brown testified that her twenty-seven-year-old daughter is now expecting another child in June 2016, which could possibly affect the future number of claimed dependents.

Regarding the stepfather, Ms. Brown further testified that he resides in the home and "has knee problems." She testified that as of the hearing, the stepfather had applied for Social Security, but did not then receive benefits, earn any income, or otherwise support the household. The current status of his Social Security application is unclear. Neither the Schedule J nor Form 22C filed in the case list the unnamed stepfather, nor has either document been amended.

The Trustee argues that Ms. Brown owes no legal duty or obligation to provide a vehicle for her adult daughter, and the car will be paid for with funds otherwise available to increase the return to unsecured creditors in the chapter 13 case. He further asserts that Ms. Brown is not entitled to deduct the $517.00 basic and $200.00 "old car" operating expenses associated with the Honda from her disposable income.[2] The Trustee therefore objects to confirmation of Ms.

---

[2] Debtor claims a disposable income deduction of $717.00 per month on the Honda rather than its actual $120.38 monthly installment payment. The standard automobile or transportation deduction is set at $517.00 per vehicle under

3

Brown's proposed chapter 13 plan for lack of good faith pursuant to 11 U.S.C. § 1325(a)(3), and moves for dismissal of the case under 11 U.S.C. § 1307(c)(5). Ms. Brown counters that the adult daughter and grandson are "dependents" because they live in her home, have no meaningful independent income and are entirely dependent upon her for support. Thus, she maintains that under the totality of the circumstances, the proposed chapter 13 plan meets the good faith requirements of the Bankruptcy Code notwithstanding retention of two cars and should be confirmed.

## DISCUSSION

Ms. Brown may only retain two cars if the monthly lien payments for the second vehicle are made with funds deductible from "disposable income" as that term applies in chapter 13 cases under changes to the Bankruptcy Code imposed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The statutory starting point for analysis is 11 U.S.C. § 1325(a)(3), which requires a finding that "the plan has been proposed in good faith. . . ." If creditors are not scheduled to be paid in full in the case, then upon objection by the trustee or a creditor, the proposed chapter 13 plan must pledge "all of the debtor's projected disposable income to be received in the applicable commitment period . . . to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). The key term "disposable income" is defined as the difference between "income received by the debtor" and "amounts reasonably necessary to be expended . . . for the maintenance or support of a debtor and a dependent of the debtor. . . ." 11 U.S.C. § 1325(b)(2)(A)(i).

---

http://www.justice.gov/ust/eo/bapcpa/20150515/bci_data/IRS_Trans_Exp_Stds_SO.htm regardless of actual monthly payments and other costs. *See In re Jackson*, 537 B.R. 238 (Bankr. E.D.N.C. 2015) (a debtor may take the full standard amount even if the actual monthly payment is less than the standard ownership expense).

The first part of that equation ("income received by the debtor") can reasonably be projected and tested from the wage history of a debtor with past steady employment and other income sources, known or projected. However, deriving the second segment ("amounts reasonably necessary to be expended . . . for the maintenance or support") requires a more objective test, as different chapter 13 debtors' various pre-bankruptcy circumstances and expenditures will vary, sometimes significantly. The need for consistent and fair cost allowance in all cases and regardless of particular circumstances leads to the next waystation, 11 U.S.C. § 1325(b)(3), which in turn provides that a chapter 13 plan essentially must fit the "means test" promulgated by BAPCPA at 11 U.S.C. §§ 707(b)(2)(A) and (B).

Traveling back in the Bankruptcy Code to chapter 7, the first stop for permissible automobile expenditures is found in § 707(b)(2)(A)(iii)(II), which states that a debtor is allowed to make payments necessary "to maintain possession of the debtor's primary residence, motor vehicle and other property necessary for the support of the debtor and *the debtor's dependents*, that serves as collateral for secured debts." *Id*. (emphasis added).

The term "dependent" is not defined in the Bankruptcy Code. Ms. Brown asserts that any person residing in the household who "depends" on a debtor breadwinner for food, clothing, transportation and other necessities of life is a "dependent" for all Bankruptcy Code purposes, citing *Johnson v. Zimmer*, 686 F.3d 224, 226 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 846, 184 L.Ed.2d 655 (2013). She reads too much into the *Johnson* majority opinion. In that case, the Fourth Circuit considered the proper definition of "household" under 11 U.S.C. § 1325(b) for purposes of establishing "household size" and considered three methods of analysis for making that determination: (1) the broadest definition of all persons residing in a home, regardless of economic impact, as under a United States Census Bureau approach (commonly called the "heads

5

on beds" test); (2) the narrowest definition of persons qualifying as dependents for federal tax return treatment; and (3) the "economic unit" approach that recognizes the modern reality that support and maintenance of many households consists of more than a nuclear family or persons claimable as dependents on federal income tax returns.

The Fourth Circuit found the "economic unit" approach to be the most flexible in fitting the unique facts presented by different circumstances, as "it recognizes that a debtor's 'household' may include non-family members and individuals who could not be claimed as dependents on the debtor's federal income tax return, but who nonetheless directly impact the debtor's financial situation." *Id*. at 237. *See also In re Morrison*, 443 B.R. 378 (Bankr. M.D.N.C. 2011); *In re Herbert*, 405 B.R. 165 (Bankr. W.D.N.C. 2008). Under the "economic unit" approach, a debtor's household includes all individuals, regardless of relationship, whom "the debtor financially supports and those who financially support the debtor. In other words, those whose income and expenses are inter-dependent with the debtor's are part of his or her 'household' for purposes of § 1325(b)." *Johnson*, 686 F.3d at 237.

Ms. Brown testified that her twenty-seven-year-old daughter has no income, is not able to "sustain" herself financially at the present, has health issues, and is entirely reliant upon the Debtor for all means of support. The Trustee concedes that based on the evidence presented in the case, the adult daughter and grandson are part of Ms. Brown's economic unit under the *Johnson* case, and this court agrees. However, to find that either or both are *dependents* of Ms. Brown as that term is used in the Bankruptcy Code requires a further showing.

The *Johnson* court discussed, but did not define, who is or can be a "dependent" for purposes of 11 U.S.C. § 707(b)(2)(A)(iii)(II). It noted that "household" and other related words such as "dependent" are used interchangeably throughout the Bankruptcy Code concerning

6

"disposable income" and similar subjects, but also noted that "related words" mean different things in different parts of the Bankruptcy Code. *See id*. at 230.  The *Johnson* majority opinion states:

> Moreover, while the use of "household" as opposed to "family" or "dependents" in (terms used elsewhere in § 1325(b)(2)) would indicate that the term means *something different from those words,* that does not automatically indicate that Congress intended for the term "household" to be synonymous with the Census Bureau's definition and refer to *any* person living in a particular residence.

*Id*. at 235–36 (emphasis added).  Therefore, while all dependents are members of the household, not all members of a household are necessarily dependents.

For children of a taxpayer, the Internal Revenue Code ("IRC") defines the term "dependent" at 26 U.S.C. § 152 as a child below the age of nineteen or a full-time student under the age of twenty-four. *Id.*  Ms. Brown testified that her daughter is a full-time student and hopes to earn an associate degree within the next eighteen months and obtain meaningful employment. Regardless, she is over twenty-four years of age.  Therefore, if the IRC definition for "dependent" were used here, the adult daughter would be excluded and Ms. Brown would be limited to two dependents under the Tax Code, being herself and the seven-year-old daughter.[3]

Finally, and understandably, while Ms. Brown feels a strong and commendable moral obligation to support her adult daughter and minor grandchild, neither qualifies as her "legal dependent" under North Carolina law.  For example, in a hypothetical domestic law dispute, Ms. Brown could not be ordered by a North Carolina state court to support, feed, clothe and provide transportation for the adult daughter and grandson as she might be for her minor child or a dependent spouse.  *See generally Williams v. Williams*, 299 N.C. 174, 180, 261 S.E.2d. 849, 855 (1980) (providing that "a spouse is actually substantially dependent if he or she is currently unable to meet his or her own maintenance or support"); *Coble v. Coble*, 300 N.C. 708, 711, 268 S.E.2d.

---

[3] Other instances of dependency under 26 U.S.C. § 152 and elsewhere in the IRC can be found, but further evidence (that was not presented by Ms. Brown) would be necessary to make the requisite finding.

185, 188 (1980) (discussing a parent's obligation "to provide material support for . . . minor children"); *Barrett v. Barrett*, 140 N.C. App. 369, 536 S.E.2d 642 (2000) (describing the steps used to analyze whether an individual is a dependent spouse in an alimony action).

As a consequence, and strictly speaking, Ms. Brown would not be allowed to retain the Honda as a vehicle necessary for the "debtor's dependents" under 11 U.S.C. § 707(b)(2)(A)(iii)(II) and satisfy the means test without looking beyond that particular statute. However, a determination that the adult daughter and grandson are household members but not dependents of Ms. Brown is not the end of this story.

Several bankruptcy courts have held that an individual debtor, with or without dependents, may claim deductions for two vehicles in a case. *See, e.g.*, *In re Scurlock*, 385 B.R. 814 (Bankr. M.D.N.C. 2008); *In re Barrett*, 371 B.R. 860 (Bankr. S.D. Ill. 2007); *In re Zaporski*, 366 B.R. 758 (Bankr. E.D. Mich. 2007). Thus, retention of two cars by a single debtor is not per se impermissible under the Bankruptcy Code, even if the second car is not used by a debtor or her dependent (under the narrow IRS test definition of the word), but rather by someone else in the same household.

In *Barrett*, a single chapter 13 debtor sought to keep both a Yamaha motorcycle and a Toyota pick-up truck. The trustee objected on the basis that the debtor could only claim one vehicle for inclusion in the § 707(b)(2) means test. However, the court noted that Official Form 22C,[4] at lines 28 and 29 specifically, "permits a one-person household to claim ownership expenses for two vehicles." *Barrett*, 371 B.R. at 862. The vehicles were not "luxury cars" and associated costs did not exceed permissible transportation costs under the Internal Revenue Manual ("IRM") and applicable IRS "National Standards and Local Standards" (the "Standards").

---

[4] Official Form 122A-2 has now replaced Official Form 22C, which was in effect for both *Barrett* and the present case. The modifications in the present form are not pertinent to this analysis.

8

The *Barrett* court held that the Standards determine whether the projected costs are "reasonably necessary" under § 1325(b), and consequently replaced any "subjective measure of whether the expense should be permitted." *Id*. at 865. The *Barrett* debtor was therefore allowed to retain both vehicles.

Similarly, in *Zaporski*, the court in that case analyzed whether a single chapter 7 debtor without dependents could take disposable income deductions for ownership costs and operational expenses associated with two cars under the means test. *Zaporski*, 366 B.R. at 758. The trustee objected to inclusion of the full transportation budget for two cars because, among other things, neither car was subject to a lien. Consequently, actual expenses were likely to be less. The trustee urged the court to apply actual amounts likely to be expended rather than allow the budgeted amount for each case. *Id.* at 764. The *Zaporski* court analyzed whether the full allowable transportation costs in the Standards incorporated into the means test of 11 U.S.C. § 707(b)(2)(A) and (B) by Lines 22, 23 and 24 of form B22A[5] were permitted in all cases, or if each case had to be analyzed for varying factors such as a debtor's "actual transportation expenses." *Id.* It concluded that the combined transportation costs statutory budget would be allowed without regard to varying factors such as necessity or household size, once a debtor established threshold facts that: (1) the petition was not filed in bad faith and (2) the totality of circumstances did not show abuse under 11 U.S.C. § 707(b)(3). *Id. at* 768. Because the full transportation budget was available and neither vehicle was a "luxury car," the means test was satisfied, and the petition was deemed filed in good faith. As in *Barrett*, the debtor in *Zaporski*[6] was allowed to retain both cars. *Id.* at 769.

---

[5]  The form used in chapter 7 cases in 2007, since updated and replaced as referenced.
[6] While the *Zaproski* court allowed the debtor to retain two vehicles, it concluded that based on his finances, the debtor could afford to fund a chapter 13 plan. *Zaporski*, 366 B.R. at 774. As a result, the court gave the debtor fourteen days to convert his chapter 7 case to chapter 13 or face dismissal. *Id.*

Finally, in *Scurlock*, Bankruptcy Judge Aron in the Middle District of North Carolina held that transportation expenses associated with a second vehicle owned by a single chapter 13 debtor could fit within permissible disposable income deduction confines. *Scurlock,* 385 B.R. at 816. Lines 28 and 29 of Official Form B22C specifically allowed two vehicles without regard to whether the case presents a "single debtor, a single debtor with dependents, or joint debtors." *Id.*

Other courts reviewing the question of multiple cars in one case have denied allowance of a second car for a single debtor under the circumstances of those cases. *See In re Winslett*, 2010 WL 5112171 (Bankr. D.S.C. 2010); *In re Aprea,* 368 B.R. 558 (Bankr. E.D. Tex. 2007); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006). In each case, the courts considered the particular facts and declined to allow a disposable income deduction for second car expenses. The three courts concentrated on whether the identity of the users of the second cars were legal dependents (the debtor's fiancé rather than spouse in *Aprea* and, as here, adult college student children rather than minors in *Winslett*), or otherwise substantially affected the return to unsecured creditors in *Hardacre*.

Nothing in the means test's winding path and string of statutory citations governing disposable income and what constitutes reasonable expenses for deductions requires that a debtor be allowed two cars as a matter of right. The fact that a form contains two lines does not mandate a right to two cars. To hold otherwise allows a form authored under IRS regulations to govern the will of Congress and effectuate changes to the Bankruptcy Code extended under BAPCPA. On the other hand, Congress also did not bar a debtor from owning and retaining two cars. Instead, a balancing act must be performed in considering other factors to determine if the plan that retains two motor vehicles for a debtor was otherwise filed in good faith. Thus a court "may" allow the second vehicle (*Scurlock,* 385 B.R. at 816) under the "totality of the circumstances" (*Zaporski,*

366 B.R. at 769) without a hard and fast rule eliminating all discretion as *Barrett* would suggest, and without imposing a strict "one debtor one car rule" as some cases would impose.

As a threshold issue, a debtor may not exceed allowed deductions for ownership or leasing costs attributable to two vehicles under the Local Standards (currently $517.00 each).  If monthly payments on the two cars exceed those amounts, no other consideration will be necessary.  Here, the combined vehicle payment expense is $396.72 per sections 13 and 33 of Ms. Brown's Official Form 22C-2, which leaves room for operations and repairs as well.  Also, the vehicles listed are six and eight years old, respectively, so neither the GMC nor the Honda would be characterized as a luxury car and neither appear to be excessively expensive to operate.  Finally, an additional "old car" allocation of $200.00 is permitted for the Honda.  Ms. Brown therefore meets the first criteria on retaining two cars.

However, Ms. Brown still must meet the chapter 13 "good faith" requirements.  Other "factors" that may be considered as to whether her plan was filed in good faith include:

> [T]he debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor. Although the court's discretion in making the good faith determination is necessarily a broad one, the totality of circumstance[s] must be examined on a case by case basis in order [to] fairly apply the statute. . . .

*Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982).

In this case, Ms. Brown satisfies the "unusual or exceptional problem," as she is forced to either support her adult child, or watch both her daughter and five-year-old grandchild go without. Also, a genuine need for two cars has been shown, being the daughter's transportation to school and the benefit of a small child while Ms. Brown uses the other car to reach her employment and keep the household relatively self-sufficient.

11

On the other hand, Ms. Brown proposes only a 6.6% return to unsecured creditors (at most, as the Trustee reduces the return by a percentage point) while using money saved to retain a valuable asset. Removing the $717.00 per month currently allocated for the Honda on Ms. Brown's Form 22C would generate a substantial benefit to the unsecured creditors. Additionally, the daughter's Lexus has some salvageable value, and presumably will either be sold or repaired. Meanwhile, the adult daughter cannot reasonably expect unsecured creditors of her mother (not even her own creditors) to pay for a car entirely used by her.

Finally, and perhaps most crucial here, chapter 13 plan monthly payment amounts are not decided in the vacuum of a debtor's present wages and circumstances. Ms. Brown testified at the hearing that her daughter would likely graduate from community college "in 2017, possibly get a job and get out," and that the "goal is to get her out." The chapter 13 plan will continue into 2020, while the residence of the daughter in the household appears to be temporary.

The Bankruptcy Code requires that "all of the debtor's projected disposable income" be paid into the plan and "applied to make payments to unsecured creditors. . . ." 11 U.S.C. § 1325(b)(1)(B). When circumstances materially change during a plan's life, it must be modified to take into account additional income to increase the return to unsecured creditors. 11 U.S.C. § 1329. When a change in income or expenses is "known or virtually certain," then the anticipated modification should be baked into the plan from its inception. *See Pliler v. Stearns*, 747 F.3d 260, 267 (4th Cir. 2014) ("[W]e do not doubt a bankruptcy court's ability to consider Schedule I, Schedule J, or other pertinent evidence to capture 'known or virtually certain' changes to disposable income. After all, the Supreme Court itself did so in *Lanning*." (citing *Hamilton v. Lanning*, 560 U.S. 505, 511 (2010))). Ms. Brown does not appear to take any likely changes into account regarding the second automobile. She instead wants to bake the plan cake and eat it too.

12

Finally, pursuant to the filings in the case as augmented by Ms. Brown's testimony, the household size for purposes of § 1325(b) at best remains at four, comprised of Ms. Brown, her seven-year-old daughter, the adult daughter, and the five-year-old grandson. Ms. Brown's attempt to add her stepfather presently fall short from procedural and factual standpoints. She did not identify the stepfather by name, nor did she provide more than cursory information regarding his age and physical condition, and the status of his Social Security application, eligibility and likely income. Further, Ms. Brown did not claim her stepfather as a member of the household in either Schedule J or Form 22C, and neither document has been amended. As with the daughter's temporary residency status, Ms. Brown seeks to take advantage of the stepfather's head on a bed without regard to his particular circumstances. Therefore, including the stepfather in the household size is currently disallowed for lack of sufficient evidence.[7]

All of these factors require further action and evidentiary showing on the part of Ms. Brown to avoid a finding of lack of good faith. The chapter 13 plan, as presently proposed, cannot be confirmed. However, instant dismissal will not serve the interests of anyone. Instead, within fourteen (14) days from the date hereof, Ms. Brown may amend her plan and other case documents to: (a) list properly her exact household size and identity of persons in the household; (b) take into account the future effect of the Honda deduction given the daughter's temporary status; (c) identify the stepfather's contributions if Ms. Brown asserts that he is part of the household; and (d) incorporate any other factors necessary to modify the plan for a finding of good faith. Should she fail to amend her plan within the allocated time, the case will be dismissed. Within fourteen (14)

---

[7] The court takes no position on whether Ms. Brown's stepfather is or is not properly part of her household. Should Ms. Brown later amend her filed Schedule J and Form 22C to claim her stepfather as a household member, she must also report the actual, or expectation of future, Social Security payments for consideration in the "filed in good faith" analysis.

days after the filing of a plan modification, the Trustee may file further objections thereto. These deadlines may be increased without further order by stipulation of the parties.

**END OF DOCUMENT**